

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN ILLINOIS

| | |
|---|---|
| ADONAY LARA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| MICHAEL F. SHEAHAN, Sheriff of Cook ) | 06 C 669 |
| County, in his individual and official capacity, ) | |
| and Unknown Individuals, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adonay Lara ("Lara") brings this *pro se* complaint pursuant to 42 U.S.C. § 1983, claiming that his constitutional rights were violated during two separate incarcerations at Cook County Jail ("Jail"). On April 13, 2006, the Court granted Lara leave to submit an amended complaint in accordance with its Memorandum Opinion and Order. Lara submitted an amended complaint on April 17, 2006, without benefit of the Court's Memorandum Opinion and Order. The Court therefore struck this first amended complaint and gave Lara leave to file a second one, which was filed on May 18, 2006. Defendant Michael Sheahan ("Sheahan"), the Sheriff of Cook County at the time the second amended complaint was filed, filed a motion to dismiss the second amended complaint on August 18, 2006. Lara filed his response on November 27, 2006. For the following reasons, the Court grants in part and denies in part the motion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the

defendant "fair notice of what the suit is about and the grounds on which it rests." *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). When considering a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in plaintiff's favor. *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted). Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003) (internal quotations and citation omitted). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

In addition, a court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

## BACKGROUND FACTS

The following facts are taken from Lara's second amended complaint. On February 3, 2005, a state court judge ordered deputies to take Lara into custody and sentenced Lara to 30 days in Cook County Jail. On February 14, 2005, Lara filed an emergency motion to stay sentencing pending appeal and a notice of appeal with the Illinois Appellate Court (First District). On February 16, 2005, the Illinois Appellate Court stayed the sentence imposed on Lara and ordered that he be released from custody immediately. Lara was released later that day.

On July 21, 2005, a state court judge found Lara to be in indirect civil contempt of court and ordered Lara to pay the Office of the Public Guardian a retainer in the amount of $2,500.00 in six weeks or face incarceration. Lara made three payments. On September 20, 2005, the judge ordered Lara to be incarcerated because he had not paid the full amount. The order set a bond in the amount of $500.00; directed the Sheriff to release Lara as soon as reasonably possible after posting bond; and directed the Sheriff to immediately transport Lara to Cermak Medical Center for medical attention. (Pl.'s Ex. 2.) On September 20, 2005, a friend of Lara's went to the Jail with the cash to post Lara's bond. However, Jail employees refused to accept the cash, thus preventing the friend from posting bond. On September 23, 2005, Jail personnel accepted the cash bond and released Lara.

## DISCUSSION

Lara has made fourteen claims in regard to these two separate detentions in Cook County Jail: (1) denial of his right of access to the courts; (2) unlawful strip searches; (3) inhumane conditions of confinement; (4) involuntary servitude; (5) unlawful post-detention; (6) retaliation; (7) conspiracy in violation of 42 U.S.C. § 1985(2); (8) conspiracy in violation of 42 U.S.C. § 1986; (9) *per se* defamation; (10) violation of § 3-6023 of the Counties Code (55 Ill. Comp. Stat. 5/3-6023) in regard to the Illinois Appellate Court's order of February 16, 2005; (11) violation of § 3-6023 of the Counties Code (55 Ill. Comp. Stat. 5/3-6023) in regard to the Circuit Court's order of September 20, 2005; (12) false imprisonment; (13) fraud; and (14) intentional infliction of emotional distress. The Court considers each count in turn.

I.   **Right of Access to the Courts**

Lara alleges that when he was taken into custody on February 3, 2005, he immediately asked the guards for paper and pen so that he could draft an emergency motion to stay sentencing pending appeal and a notice of appeal. The guards told him he would be given these materials after he was processed. After he was processed, Lara again requested these materials, but the guards either failed or refused to give him paper and pen. Other inmates eventually gave Lara paper and pen, and he immediately drafted his emergency motion to stay sentencing pending appeal and notice of appeal. The guards then refused to assist Lara in mailing or filing these documents, giving these documents to friends of Lara who had traveled to the Jail for filing, or giving the documents to social workers or other personnel who could mail or file the documents. On February 14, 2005, at about 3:00 p.m., a social worker or other Jail personnel allowed Lara an opportunity to file his emergency motion to stay sentencing pending appeal and notice of appeal with the pertinent state court. On February 16, 2005, the Illinois Appellate Court (First District) stayed Lara's sentence and mandated that he be released from custody immediately. (Pl.'s Ex. 1.)

Prisoners have a due process right of access to the courts to give them a reasonably adequate opportunity to present their claims. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Such access must be adequate, effective and meaningful. *Id.* at 822. The court, however, cannot view a challenge in the abstract, and an inmate alleging denial of access to the courts lacks even the standing to assert such a claim in the absence of actual injury, which means an adverse decision in, or inability to litigate, some concrete legal claim. *See Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003) ("[A] right to access-to-courts claim exists only if a prisoner is unreasonably

4

prevented from presenting legitimate grievances to a court; various resources, documents, and supplies merely provide the instruments for reasonable access, and are not protected in and of themselves."); *Martin v. Davies,* 917 F.2d 336, 340 (7th Cir. 1990) (giving as examples of prejudice "court dates missed" and "inability to make timely filings").

Sheahan argues that Lara was not denied access to the court as there was no delay with respect to Lara's appeal. The Court disagrees. Lara claims that he was not able to file his emergency motion to stay sentencing pending appeal and notice of appeal until February 14, 2005, some eleven days after he was incarcerated, because of the guards' refusal to give him paper and pen and to mail the documents once they were drafted. Taking Lara's allegations as true, which a court must on a motion to dismiss, it is possible that Lara may have been able to file his emergency motion sooner if he had been given the necessary supplies. Because the Illinois Appellate Court granted his motion, Lara has demonstrated that he may have suffered actual injury, that is, staying in jail longer, by not being allowed to file earlier. The Court accordingly denies Sheahan's motion to dismiss as to this claim.

## II.    Unlawful Strip Searches

Lara alleges that he was subjected to numerous strip searches without probable cause, reason to believe that contraband or other dangerous materials would be found or the need to preserve institutional security. In particular, Lara claims that although it could be argued that there was some reason to strip search him when he was processed into the Jail, there was no valid reason to strip search him numerous times while he was in the custody of the Jail and when he did not have any contact with people other than the guards and inmates who were under the close

5

supervision of the guards. Sheahan argues that the strip search policy at the Jail is motivated by legitimate penological concerns.

Strip searches are permissible so long as they are motivated by legitimate penological concerns and performed in a "reasonable" manner. *See, e.g., Peckham v. Wisc. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998). Nonetheless, Lara claims that no legitimate penological concern exists after processing when he had no contact with people other than the guards and other inmates. Taking Lara's allegation as true, as we must, that no legitimate penological concern existed under these circumstances, the Court denies Sheahan's motion to dismiss as to this claim. Whether or not llegitimate penological concerns exist for these strip searches is a matter better addressed in a motion for summary judgment.

## III. Inhumane Conditions of Confinement

Lara alleges that his conditions of confinement, in particular sleeping on a mattress on the floor, an unreasonably cold cell, and exposure to second-hand smoke, violated his constitutional rights. Sheahan has addressed only the claims of sleeping on the floor and exposure to second-hand smoke.

> As this Court wrote in its Memorandum Opinion and Order of April 13, 2006:
>
> Whether these conditions constitute the denial of "basic human needs" or "the minimal civilized measure of life's necessities," *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996), *quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), is a matter to be determined on a more developed record.
>
> The court accordingly denies Sheahan's motion to dismiss as to this claim.

## IV. Involuntary Servitude

Lara reasserts his claim that defendants fraudulently induced him to work in sanitation by promising him a day off of his sentence for each day he worked. He avers that this was involuntary servitude.

The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Lara argues in his second amended complaint that he had not been convicted and therefore the exception in the Thirteenth Amendment did not apply to him. He also claims that the trial court's order of February 3, 2005, holding him in contempt, was later reversed by the Illinois Appellate Court on August 17, 2006, signifying that he had never been duly convicted of a crime.

Lara was found in contempt and sentenced to thirty days. At the time this was a valid sentence, even though the Illinois Appellate Court later reversed it. Putting him to work was not a constitutional violation. *See Kerr v. Puckett*, 138 F.3d 321, 324 (7th Cir. 1998) ("Putting prisoners to work against their will, even scrubbing walls with toothbrushes, is hard to describe as a violation of the Constitution.").

Lara's claim that he was induced to work with a promise of time off his sentence is speculative at best. Lara actually served fourteen days of his thirty-day sentence. Whether or not Sheahan or other Jail officials would have given him any days off his sentence in exchange for working, neither Lara nor this Court will ever know. Even if Sheahan or other Jail officials never intended to give Lara any time off his sentence, he never suffered any actual injury. The Court accordingly grants Sheahan's motion to dismiss as to this claim.

7

## V. Unlawful Post-detention

Lara claims that, although the Illinois Appellate Court's order of February 16, 2005, directed that he be released immediately, defendants continued to hold him for an unreasonable length of time. Not every delay in the release of one entitled to restoration of liberty violates the Due Process clause. A wrongful detention crosses the constitutional line only if it unreasonable. *Wood v. Worachek*, 618 F.2d 1225, 1231 (7th Cir. 1980). In *Wood*, plaintiff was arrested and incarcerated in the jail for three hours. *Id.* The arrest was later determined to be unlawful. The Seventh Circuit held that a jailer is liable for the illegal detention of an inmate when he unreasonably detains the inmate. *Id.* The court held that a three-hour delay was not unreasonable. *Id.* at 1232.

The Illinois Appellate Court's order directing Lara's release was filed at 2:45 p.m. on February 16, 2005. (Pl.'s Ex. 1.) Lara admits that he was released the same day (Compl. ¶ 128), but he does not state at what hour and minute he was actually released. Whether or not Jail authorities unreasonably delayed in releasing Lara cannot be discerned on this record. The Court accordingly denies Sheahan's motion to dismiss this claim.

Lara also claims that on September 20, 2005, Jail authorities continued to hold him although a friend was prepared to pay his bond in cash. As a result, he was held until September 23, 2005. Whether or not Jail authorities unreasonably delayed in allowing Lara to be released on bond cannot be determined on this record. The Court thus denies Sheahan's motion to dismiss this claim.

## VI. Retaliation

Lara alleges that on February 13, 2005, he was peaceably petitioning authorities for an opportunity to mail or file his emergency motion to stay sentencing pending appeal and a notice of appeal when the unnamed guard told him in a loud voice in front of other guards and inmates: "You are a convicted felon! You have no rights you piece of ____."

In its Memorandum Opinion and Order of April 13, 2006, the Court dismissed Lara's original claim as to these guard's statements because defamation is not a constitutional violation. *See generally Paul v. Davis*, 424 U.S. 693 (1975). Lara has now dressed up his defamation claim as a retaliation claim.

It is well-established that "otherwise permissible conduct can become impermissible when done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). These fundamental rights include an inmate's First Amendment right to file grievances (or in Lara's case, his emergency motion). *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). However, even under the liberal pleading standards afforded *pro se* plaintiffs, a plaintiff still must identify the protected conduct leading to the alleged retaliation. *See Walker v. Thompson*, 288 F.3d 1005, 1011-12 (7th Cir. 2002) (plaintiff must state at least the grievance or suit leading to the retaliation and the acts constituting retaliatory conduct); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (plaintiff must specify both his own protected conduct and the acts claimed to be taken in retaliation to allow defendants to properly respond to complaint).

Although Lara claims the guard made these statements in retaliation for his filing this emergency motion, the Court fails to see any retaliation as Lara was able to file the motion that very day and, in fact, was released two days later.

9

The guard's words were inexcusable and unprofessional; nonetheless this does not rise to the level of a constitutional violation. *See Haslam v. Page*, No. 1:04-CV-777-DFH-WTL, 2005 WL 2100073, at *3 (S.D. Ind. Aug. 29, 2005) (citing *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987)) (derogatory remarks do not constitute a constitutional violation). The Court therefore grants Sheahan's motion to dismiss as to this claim.

### VII. Conspiracy in Violation of 42 U.S.C. § 1985(2)

Lara alleges that Sheahan and other unknown defendants conspired in violation of 42 U.S.C. § 1985(2) to deprive him of his constitutional rights. The elements of a claim under section 1985(2) are: (1) a conspiracy; (2) to deter a witness by force, intimidation or threat from attending or testifying before a United States court; (3) that results in injury to the plaintiff. *See, e.g., Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2d Cir. 1984). *Cf. Haddle v. Garrison*, 525 U.S. 121, 124-25 (1998) (spelling out the elements of a conspiracy under 42 U.S.C. § 1985(3)); *Roach v. City of Evansville*, 111 F.3d 544, 547 (7th Cir. 1997) (same). Section 1985(2) further requires that the conspiracy be motivated by "racial or some other type of invidious, class-based discrimination." *Lowe v. Letsinger*, 772 F.3d 308, 311 (7th Cir. 1985) (affirming dismissal of section 1985(2) claim because complaint did not allege that defendants' actions were motivated by "racial or some other type of invidious, class-based discrimination") (citations omitted); *Friedman v. Vill. of Skokie*, 736 F.3d 236, 238 (7th Cir. 1985) (affirming dismissal of section 1985(2) claim, stating that plaintiff "has not alleged the type of racial or other class based discrimination that those sections are intended to prohibit") (citation omitted).

The Court has scoured Lara's complaint. Nowhere does he allege that Sheahan and the

unknown defendants took their alleged unconstitutional actions because of racial animus. He therefore has failed to state a claim under section 1985(2). The Court grants Sheahan's motion to dismiss in regard to this claim.

## VIII. Conspiracy in Violation of 42 U.S.C. § 1986

Because liability under section 1986, for neglecting to prevent the conspired wrongs mentioned in section 1985, is derivative of liability under section 1985, *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991), Lara's claim as to section 1986 also fails. The Court accordingly grants Sheahan's motion to dismiss in regard to this claim.

## IX. *Per Se* Defamation

Lara brings a supplemental state claim for defamation based on the unnamed guard's statement: "You are a convicted felon! You have no rights you piece of ____."

Under Illinois law, to sustain a claim of defamation, Lara must show that defendant made a false statement about him, there was an unprivileged publication to a third party by the defendant, and the publication damaged Lara. *Gibson v. Philip Morris, Inc.*, 685 N.E.2d 638, 643 (Ill. App. Ct. 1997). Whether or not Lara will be able to demonstrate all these elements is a matter better resolved on a motion for summary judgment.

Although the Court has dismissed the federal constitutional claim in regard to this guard's statements, it may still exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" 28 U.S.C. § 1367(a). At

11

this time, the Court will exercise supplemental jurisdiction over this claim.

## X. Violation of Section 3-6023 of the Counties Code in Regard to the Illinois Appellate Court's Order of February 16, 2005

Lara claims that Sheahan and the unknown defendants violated 55 Ill. Comp. Stat. 5/3-6023 when Jail officials failed to release Lara immediately as directed by the Illinois Appellate Court on February 16, 2005. This statute provides in pertinent part:

> Each sheriff shall, in person or by deputy, county corrections officer, or court security officer, attend upon all courts held in his or her county when in session, and obey the lawful orders and directions of the court, and shall maintain the security of the courthouse.

In *Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992), the Seventh Circuit considered the statutory duties of the sheriff. By law, in Illinois, county sheriffs have no discretion in executing court orders. *Id.* at 371. Rather, the Sheriff's Department has a statutory duty to "serve and execute ... all orders ... that may legally be directed or delivered to them." 55 Ill. Comp. Stat. 5/3-6019. In addition, by statute, if the sheriff fails to perform the command of any warrant, process, court order, or judgment, he or she is deemed in contempt of court and is liable for damages. 55 Ill. Comp. Stat. 5/3-6020. The Court of Appeals ultimately held that the sheriff is acting as an arm of the Illinois state judicial system when *following* a lawful court order and thus entitled to Eleventh Amendment immunity.

However, Lara contends that Sheahan was not complying with his statutory duties. In *Williams v. Pucinski*, No. 01 C 5588, 2002 WL 31155102 (N.D. Ill. Sept. 26, 2002), this Court confronted a similar issue, albeit against the Clerk of the Circuit Court of Cook County. The Court found that the Clerk could be held liable in her individual capacity for refusing to comply

12

with the state court rules. *Id.* *4.

Sheahan argues that Lara has made no reference to any contempt order entered against the Sheriff or his deputies and that the second amended complaint demonstrates compliance with the order. As discussed in Section V, the court cannot determine on this record whether Jail authorities unreasonably delayed in releasing Lara. It also cannot be determined on this record, if this alleged unreasonable delay was the result of Sheahan and the unknown defendants refusal to abide by the Illinois Appellate Court's order. Whether a contempt order is a prerequisite for bringing this claim is also a matter that cannot be determined on this record.

The court accordingly denies Sheahan's motion to dismiss as to this claim.

### XI. Violation of § 3-6023 of the Counties Code in Regard to the Circuit Court's Order of September 20, 2005

Lara also claims that Sheahan and the unknown defendants violated 55 Ill. Comp. Stat. 5/3-6023 when Jail officials refused to accept the cash payment for Lara's bond. As discussed above, it cannot be determined on this record, if this alleged unreasonable delay was the result of Sheahan and the unknown defendants refusal to abide by the Circuit Court's order. Whether a contempt order is a prerequisite for bringing this claim is also a matter that cannot be determined on this record.

The court accordingly denies Sheahan's motion to dismiss as to this claim.

### XII. False Imprisonment

Lara brings a supplemental state claim of false imprisonment in regard to his allegation that Jail authorities held him for an unreasonable amount of time after the Illinois Appellate

13

Court ordered that he be released immediately on February 16, 2005, and his allegation that Jail officials refused to accept the cash payment for his bond on September 20, 2005. As the Court has already determined that Lara's federal claim of unlawful post-detention survives this motion to dismiss, it will, at this time, allow supplemental jurisdiction as to his claim of false imprisonment under state law. Sheahan's motion to dismiss is denied as to this claim.

## XIII. Fraud

Lara brings a supplemental state claim of fraud in regard to his allegation that Jail authorities fraudulently induced him to work with a false promise of giving him one day off his sentence for each day he worked. The elements of common law fraud include the following: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the statement; and (5) the plaintiff's damages resulting from reliance on the statement. *Suburban 1, Inc. v. GHS Mortgage, LLC*, 833 N.E.2d 18, 21 (Ill. App. Ct. 2005). Common law fraud requires damages stemming from reliance on a fraudulent statement. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996).

As discussed in Section IV, Lara actually served only fourteen days of his thirty-day sentence. Whether or not Sheahan or other Jail officials would have given him any days off his sentence in exchange for working, is speculative. Even if Sheahan or other Jail officials never intended to give Lara any time off his sentence, he never suffered any actual damages. The Court grants Sheahan's motion to dismiss as to this claim.

## XIV. Intentional Infliction of Emotional Distress

Lara brings a supplemental state law claim of intentional infliction of emotional distress. In order to state an intentional infliction of emotional distress claim under Illinois law, a plaintiff must allege that defendants' extreme and outrageous conduct caused him severe emotional distress and that defendants intended to inflict severe emotional distress or knew that such distress was highly probable. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

However, as discussed above, whether or not Sheahan and the unnamed defendants' conduct constituted intentional infliction of emotional distress cannot be determined on this record. Sheahan's motion to dismiss is accordingly denied as to this claim.

## XV. Individual Capacity of Defendant Sheahan

In *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), the Seventh Circuit recognized that high level officials cannot be held liable in their individual capacities by virtue of the doctrine of *respondeat superior* and explained that high level officials normally cannot be held liable for "clearly localized, non-systemic violations." *Id.* at 1428-29. However, high level officials are expected to have personal responsibility for systemic conditions.

At this stage of the litigation, it is difficult to tell if Lara's remaining claims of denial of the right of access to the courts; unlawful strip searches; inhumane conditions of confinement; unlawful post-detention; violation of section 3-6023 of the Counties Code based on the Illinois Appellate Court's Order of February 16, 2005 and the Circuit Court's Order of September 20, 2005; false imprisonment; and intentional infliction of emotional distress are non-systemic or systemic violations. For example, if guards consistently deny inmates paper and pen and refuse

15

to mail their court pleadings, this may be systemic problem for which Sheahan may be liable. As noted in Section X above, Sheahan may also be liable in his individual capacity for failure to follow 55 Ill. Comp. Stat. 5/3-6023.

However, Sheahan clearly cannot be held liable in his individual capacity for the claim of *per se* defamation. These statements were made by an unnamed guard and do not constitute a systemic problem with the jail.

The Court accordingly denies Sheahan's motion to dismiss as to his liability in his individual capacity, except for the claim of *per se* defamation.

Although the court will allow Sheahan to remain in his individual capacity as to systemic claims, the Court notes that in its Memorandum Opinion and Order of April 13, 2006, the Court advised Lara that he needed to name as defendants the Jail personnel who allegedly violated his constitutional rights. The Court specifically advised Lara:

> Once plaintiff has obtained service on Sheahan, he may send to the attorney representing Sheahan interrogatories, *i.e.*, a list of questions, eliciting information regarding the identity of the defendants who allegedly violated his constitutional rights. Once he learns defendants' identity, whether through these interrogatories or by other means, he should *immediately* seek leave to amend the complaint to substitute their names for those of the unknown Cook County Guards. Summonses will then issue for service on defendants in interest.

To date, Lara has not named any other defendants, although counsel for Sheahan filed an appearance on July 19, 2006. In addition to sending interrogatories, because he is not incarcerated, Lara might have discovered the identities of these unknown defendants by other means. For example, he might have made arrangements with Jail authorities to review logs, and the like.

### XVI. Official Capacity of Defendant Sheahan

Lara also brings these claims against Sheahan in his official capacity. An official capacity claim is, in essence, a claim against the governmental entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Chortek v. Milwaukee*, 356 F.3d 740, 748 n.4 (7th Cir. 2004). A local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Chortek*, 356 F.3d at 748.

The Seventh Circuit has determined that a municipality can be said to have violated the rights of a person because of its policy when a widespread practice, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (internal quotation marks and citation omitted).

Unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)). A plaintiff is not required to meet a heightened pleading standard for a section 1983 official-capacity claim. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006). Lara therefore did not need to plead particular facts upon which he based his claim of an official

17

policy or custom. Although he will need to come forward with more than mere assertions to demonstrate that his remaining claims were the result of an official policy or custom, his pleadings at this stage of the litigation are sufficient to survive a motion to dismiss. *Id.*; *see* Fed. R. Civ. P. 8(a)(2).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Sheahan's motion to dismiss. The Court grants the motion as to Lara's claims of: (1) involuntary servitude; (2) retaliation; (3) conspiracy in violation of 42 U.S.C. §§ 1985(2) and 1986; and (4) fraud. The Court denies the motion as to Lara's claims of: (1) denial of the right of access to the courts; (2) unlawful strip searches; (3) inhumane conditions of confinement; (4) unlawful post-detention; (5) *per se* defamation; (6) violation of section 3-6023 of the Counties Code based on the Illinois Appellate Court's Order of February 16, 2005 and the Circuit Court's Order of September 20, 2005; (7) false imprisonment; and (8) intentional infliction of emotional distress. Sheahan is given twenty days to answer or otherwise plead to the second amended complaint.

**SO ORDERED**  ENTERED: 3/30/07

HON. RONALD A. GUZMAN
United States District Judge